1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CRAIG A. WRIGHT,

11          Petitioner,            No. CIV S-10-CV-3468 GEB CHS (HC)

12      vs.

13   JAMES A. YATES,

14          Respondent.        FINDINGS AND RECOMMENDATIONS

15   _____/

16                        **1. INTRODUCTION**

17          Petitioner, Craig A. Wright, is a state prisoner proceeding pro se with a petition for

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving a determinate

19   sentence of twelve years following his 2008 no contest plea to attempted murder with the admission

20   of a penalty enhancement for great bodily injury.  Here, Petitioner challenges the constitutionality

21   of his conviction.

22                           **II.  CLAIMS**

23          Petitioner presents several grounds for relief.  Specifically, the claims are as follow:

24      (1)    The trial court violated his due process rights by sentencing
               him to a longer sentence than specified in his plea agreement.

25

26                             -1-

(2)     Both trial and appellate counsel rendered prejudicially ineffective assistance.

(3)     The trial court violated his rights under *Cunningham v. California*, 549 U.S. 270 (2007), by imposing the upper term sentence based on an aggravating factor not submitted to a jury and proven beyond a reasonable doubt.

(4)     The trial court denied his constitutional right to be present and participate in his own defense during his January 26, 2006 competency hearing, a critical stage in the proceedings.

Based on a thorough review of the record and applicable law, it is recommended that each of Petitioner's claims be denied.

## III. BACKGROUND

**A.     FACTS**

The basic facts of Petitioner's crime were summarized in the February 2008 pre-sentence report filed in the Solano County Superior Court:

> [On October 23, 2001], [p]olice were dispatched to the hospital in regards to an assault. The victim was assaulted by her boyfriend, the defendant, and taken to a hospital in Antioch. Her condition became worse and she was unconscious and bleeding on the brain. She was transported to John Muir Hospital in Walnut Creek. Her condition stabilized enough that she was able to talk with police. She stated that she had been dating the defendant for two and a half months. He had been staying with her for the past week and a half prior to the offense. The victim stated that the defendant has an eight year old daughter in Fairfield. She related that she had been arguing with the defendant because he thought she was still together with her ex-boyfriend. She went into the bedroom to watch television and the defendant followed her. He then punched her in the face while she was sitting on the bed. She added that the defendant is an ex-professional boxer. He told the victim that he was going to kill her and repeatedly punched her in the face. She tried to fight back, but the defendant kept punching her, knocking her off the bed. She was knocked unconscious, and the next thing she remembered was the defendant telling her that she needed to get up so he could take her to the hospital. The victim reiterated that she thought the defendant was trying to kill her. She said that the defendant took her inside of the hospital and then left in his car. Pictures were taken of the victim's injuries, which included a swollen cheek and both of her eyes were bruised and swollen shut. Medical records indicated that the victim has a prior history of a head injury in which there was a blood clot on

-2-

her brain. A craniotomy was performed in 1992 and she is on disability. In this case, she had a soft tissue contusion, cerebral contusion, concussion, broken blood vessels in her eyes and intracranial hemorrhage. An E.P.O. was granted to the victim. D.O.J. was contacted and confirmed that the defendant has a substantial history of violence dating back to 1978. A warrant was issued for the defendant's arrest. He was subsequently arrested at the Niereka House, a self-committal crisis facility. On 10-26-01, the victim's daughter called the police and indicated that defendant called her from jail to tell her that he was sorry for what he did to the victim.

. . . .

[The defendant] reported that on the day of the offense, he had taken insulin for his diabetes that had been kept in his vehicle for a couple of weeks. He stated that his insulin was not working. He went to a friend's house, where he consumed at least one beer (in an attempt to raise his blood sugar). He then went to a donut shop and subsequently consumed about 6 donuts before driving to the victim's house. He stated that he had seen the victim with an ex-boyfriend within the prior week, and was upset. He stated that while at the victim's house, he told her he was going to leave and called her a "slut". He then was "struck" by something. He stated that he was in insulin shock at the time, and does not recall what happened after that. He stated that he is "not trying to make an excuse for what happened, because obviously something did happen." He stated that he found himself "in the icebox, eating cookies and drinking juice." He said that he began feeling pain in his hands and on his face, and realized that "something must have happened." He then ran into the room and found the victim on the floor. He then took her to the hospital, where he wanted to stay with her. He said that he left because the security guard informed him that he would have to call the police if the defendant didn't leave.

. . . .

The victim reported that on the day of the offense, she remembers the defendant smelling of alcohol when he came over. She said that the defendant was trying to talk her out of breaking up with him, and when that didn't work, he resorted to violence. She said that she remembers him telling her "if I can't have you, nobody will." He then began punching her. She said that she did the best she could to fight back, and to just survive. She remembers him nudging her several times while in the car, indicating to her that she kept losing consciousness. She said that once they arrived at the hospital, she was just trying to stay alert until she got out of the car and into the care of the hospital staff. She stated that he had told her that if she told anyone what he did, he would kill her.

-3-

CT at 323-326.

**B. PROCEDURAL HISTORY**

The procedural history leading up to Petitioner's conviction was summarized on direct appeal by the California Court of Appeal, First Appellate District, as follows:

On January 30, 2002, appellant pleaded no contest to one felony count of attempted murder (Pen. Code, §§ 664/187, subd. (a), further references are to the Penal Code unless otherwise specified). Initially, appellant had been charged with three felony counts arising from an incident on October 23, 2001. Count one was a felony count of attempted murder (§§ 664/187 subd. (a)), count two was a felony count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1), and count three was a felony count of corporal injury to a spouse/cohabitant (§ 273.5, subd. (a)). Counts one and three were serious felonies within the meaning of section 1192.7, subdivision (c)(8).

Appellant has a history of filing motions pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. Over the course of the proceedings, he filed over 20 *Marsden* motions and changed attorneys several times. Appellant filed his first *Marsden* motion following his initial plea of not guilty on October 31, 2001. The court denied the motion on December 5, 2001, but a subsequent *Marsden* motion was granted on December 21, 2001. New counsel was appointed prior to appellant's change of plea on January 30, 2002.

The January 30 plea agreement was entered into prior to the preliminary hearing, and by its terms appellant pled no contest to count one and accepted an indicated sentence of 10 years in state prison. The prosecution moved to dismiss the other charges. The trial court admonished appellant regarding his rights and found that appellant's admission was freely, intelligently, and voluntarily made and that the factual basis for the plea was established by stipulation.

On April 18, 2002, the prosecution requested that the plea bargain be withdrawn and the plea set aside. The court granted the motion. On April 22, 2002, the court also granted appellant's third *Marsden* motion and appointed new counsel on April 24, 2002. On May 15, 2002, the prosecution amended the complaint to reflect an additional allegation that appellant had two serious prior felony convictions in Contra Costa County.

During the subsequent preliminary hearing, on August 1, 2002, appellant was held to answer on counts one (§§ 664/187) and two (§ 245, subd. (a)(1)). Count three, (§ 243, subd. (d))) was dismissed at the request of the prosecution. On August 7, 2002, the prosecutor

filed an information with charges identical to the amended May 15, 2002 complaint. Subsequently, appellant filed three more *Marsden* motions, two of which were granted.

On September 2, 2003, appellant made another *Marsden* motion. However, the court deferred ruling on the motion and suspended criminal proceedings against appellant pending a section 1368 competency evaluation. The court appointed two psychologists to evaluate appellant's competency to stand trial. While the court waited for the results of the psychological examination, appellant filed another *Marsden* motion, which was granted on October 28, 2003. New counsel was appointed on October 29, 2003, and appellant immediately filed another *Marsden* motion, which was denied on November 6, 2003.

Also on November 6, 2003, the trial court reviewed the psychologists' reports and found appellant "not competent" within the meaning of Penal Code section 1368. On December 10, 2003, appellant was committed to Napa State Hospital. On the same date, the court denied a subsequent *Marsden* motion. On June 2, 2004, the court granted another *Marsden* motion and counsel was replaced on June 4, 2004.

On July 19, 2004, the court denied appellant's next *Marsden* motion as being without grounds. On September 1, 2004, appellant's counsel sought to be relieved because appellant refused to speak with the attorney; and the court denied the request. A subsequent *Marsden* motion was granted on September 29, 2004, and new counsel was appointed on October 5, 2004. On October 14, 2004, appellant filed a new *Marsden* motion, which was denied after a hearing the following day.

On October 19, 2004, court proceedings were again suspended and doctors were appointed to evaluate appellant pursuant to section 1368. On December 8, 2004, the court reviewed the doctors' reports and found appellant "not competent." The court denied appellant's next *Marsden* motion on December 13, 2004; and on January 12, 2005, appellant was re-committed to Napa State Hospital pursuant to section 1370.

On April 5, 2005, the Napa State Hospital certified that appellant had been restored to competency. The evaluation conducted at the hospital stated that appellant's history of *Marsden* motions was not due to a mental illness; and that appellant was malingering in order to avoid prison time by feigning mental illness. Appellant's next *Marsden* motion was denied on April 19, 2005. At the same hearing, appellant's counsel requested a court trial on the issue of competency. On January 20, 2006, appellant's subsequent *Marsden* motion was denied. The court held a court trial on the issue of

competency on January 30, 2006, and found appellant incompetent; he was sent to Atascadero State Hospital.

On August 4, 2006, Atascadero State Hospital certified appellant as competent and able to stand trial.  On August 24, 2006, the court granted appellant's next *Marsden* motion and appointed new counsel.  On October 12, 2006, the court found appellant competent and reinstated the criminal proceedings.

On October 18, 2007, appellant withdrew his previous pleas and pled not guilty by reason of insanity on all counts.  The court appointed doctors to evaluate appellant's sanity pursuant to section 1026.  On November 29, 2007, appellant withdrew his plea of not guilty by reason of insanity and filed a motion to reinstate his previous no contest plea of January 2002.  The court granted appellant's motion on January 9, 2008, and reinstated appellant's plea of nolo contendere to the original charge of attempted murder together with the alleged section 12022.7 enhancement, but without restriction to the original indicated sentence.  On February 1, 2008, the court amended the charging document to reflect the change from allegations of a section 12022.7, subdivision (e), to a section 12022.7, subdivision (a) enhancement.

Appellant was sentenced to a total term of 12 years on February 7, 2008.  The sentence was calculated based on nine years for count one (§§ 664/187) and three years for the enhancement (§ 12022.7, subd. (a)).  Appellant also received credit for time served.  Appellant was awarded 2296 actual days along with 298 conduct credits, for a total of 2594 total credit days.

Lodged Ex. 3 at 1-4.

Petitioner timely appealed from his conviction.  His court-appointed counsel, however, filed a *Wende* brief[1] in which she raised no appealable issues but instead requested that the appellate court conduct an independent examination of the record.  *See People v. Wende*, 25 Cal.3d 436 (1979).  In addition, counsel identified two possible issues "in the record that might arguably support the appeal," pursuant to *Anders v. California*, 386 U.S. 738 (1967).  The appellate court reviewed the record and rejected Petitioner's appeal on February 17, 2009, finding no arguable

---

[1] In California, when defense counsel is unable to find a non-frivolous appellate issue to argue, a *Wende* brief is filed in which counsel remains silent on the merits of the case and requests that the court independently examine the record for arguable issues.

1  appellate issues.  Petitioner did not seek review of the appellate court's ruling in the California
2  Supreme Court.

3          On April 8, 2009, Petitioner filed a petition for writ of habeas corpus in the Solano
4  County Superior Court.  *See* Lodged Ex. 5.  On June 11, 2009, the petition was denied on the
5  grounds that the claims raised therein could have been, but were not, raised on direct appeal.  *See*
6  Lodged Ex. 6.  Petitioner filed a second petition for writ of habeas corpus in the Solano County
7  Superior Court on August 21, 2009.  *See* Lodged Ex. 7.  On November 19, 2009, the court denied
8  the petition on the grounds that it was successive in that it presented claims identical to his
9  previously filed petition, and that it presented claims that could have been, but were not, raised in
10  either the previous petition or on direct appeal.  *See* Lodged Ex. 8.  On January 4, 2010, Petitioner
11  filed a petition for writ of habeas corpus in the California Court of Appeal, First Appellate District.
12  *See* Lodged Ex. 9.  The appellate court denied the petition without comment on January 11, 2010.
13  *See* Lodged Ex. 10.  Petitioner filed a petition for writ of habeas corpus in the California Supreme
14  Court on February 1, 2010.  *See* Lodged Ex. 11.  The petition was denied without comment on June
15  21, 2010.  *See* Lodged Ex. 12.

16          Petitioner filed his federal petition for writ of habeas corpus on November 18, 2010,
17  and he filed an amended petition on January 10, 2011.[2]  Respondent filed its answer on April 8,
18  2011, and Petitioner did not file a traverse.

19                    **IV.  APPLICABLE STANDARD OF HABEAS CORPUS REVIEW**

20          This case is governed by the provisions of the Antiterrorism and Effective Death
21  Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of *habeas corpus* filed after

22  _____

23          [2] Petitioner filed another amended petition on March 14, 2011.  This third petition, however,
    was rejected on March 28, 2011 by Magistrate Judge Gregory Hollows on the grounds that the
24  original petition and both amended petitions were nearly identical.  Moreover, Petitioner did not
    have permission to file his third petition.  Thus, the third petition was ordered to be disregarded and
25  Petitioner was informed that he need not continue filing additional petitions.

26                                              -7-

1  its enactment on April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114

2  F.3d 1484, 1499 (9th Cir. 1997).   Under AEDPA, an application for a writ of habeas corpus by a

3  person in custody under a judgment of a state court may be granted only for violations of the

4  Constitution or laws of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362,

5  375 n. 7 (2000).  Federal *habeas corpus* relief is not available for any claim decided on the merits

6  in state court proceedings unless the state court's adjudication of the claim:

7         (1) resulted in a decision that was contrary to, or involved an
       unreasonable application of, clearly established federal law, as
8         determined by the Supreme Court of the United States; or

9         (2) resulted in a decision that was based on an unreasonable
       determination of the facts in light of the evidence presented in the
10        State court proceeding.

11  28 U.S.C. § 2254(d).  *See also Penry v. Johnson*, 531 U.S. 782, 792-93 (2001); *Williams v. Taylor*,

12  529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).  This court

13  looks to the last reasoned state court decision in determining whether the law applied to a particular

14  claim by the state courts was contrary to the law set forth in the cases of the United States Supreme

15  Court or whether an unreasonable application of such law has occurred.  *Avila v. Galaza*, 297 F.3d

16  911, 918 (9th Cir. 2002).

17                                      **V.  DISCUSSION**

18  **A.  PLEA AGREEMENT**

19         Petitioner claims that the trial court violated his right to due process of law by failing

20  to sentence him pursuant to his January 30, 2002 plea bargain in which he entered a no contest plea

21  to one count of attempted murder, CAL. PENAL §§ 664/187, and admitted a penalty enhancement for

22  infliction of great bodily injury.  CAL. PENAL § 12022.7.  According to the agreement, Petitioner

23  would be sentenced to a total of ten years imprisonment; the middle term of seven years on the

24  attempted murder count and a term of three years on the penalty enhancement, to run consecutively.

25  Prior to sentencing, however, the trial court granted a subsequent April 18, 2002 prosecution request

26                                          -8-

to withdraw the plea agreement.  On October 18, 2007, following a period of multiple years during which, as set forth above, Petitioner was declared incompetent to stand trial on several different occasions, Petitioner withdrew his previous plea and entered a plea of not guilty by reason of insanity to all charges.  On November 29, 2007, Petitioner withdrew his not guilty by reason of insanity plea and moved to reinstate his January 30, 2002 plea of no contest to one count of attempted murder and his admission to the penalty enhancement for infliction of great bodily injury. The trial court, finding that Petitioner's original plea had been vacated in error, granted the request on January 9, 2008.  The sentencing judge, however, in light of new information before the court, declined to sentence Petitioner to the ten years previously agreed upon by the parties.  Instead, the judge informed Petitioner that he intended to sentence him to the upper term of nine years on the attempted murder count, the maximum allowed by statute, and a consecutive term of three years on the penalty enhancement.  Petitioner was then given the opportunity to withdraw his plea and proceed to trial. He declined to do so, however, acknowledging that he understood that the court intended to impose at minimum twelve year term of imprisonment.[3]  The court ultimately sentenced Petitioner to an aggregate twelve year term of imprisonment.

Petitioner raised this claim for the first time in a habeas corpus petition filed in the Solano County Superior Court on April 8, 2009.  The state court rejected his claim on procedural grounds, explaining as follows:

Pursuant to rule 4.551(g) of the California Rules of Court, the Court

---

[3] There was some disagreement between the parties with regard to whether Petitioner had admitted the great bodily injury enhancement pursuant to section 12022.7(a) or (e) of the California Penal Code.  Under subsection (a), the penalty enhancement was a term of three years.  Under subsection (e), the enhancement carried a low, middle, and upper enhancement term of three, four, or five years.  The prosecution argued that Petitioner was subject to the subsection (e) enhancement and urged the court to sentence him to the upper term of five years, for a total term of fourteen years imprisonment.  The disagreement was ultimately resolved in Petitioner's favor, with the court finding that he had admitted the great bodily injury enhancement pursuant to subsection (a) and was thus subject to a penalty enhancement of only three years.

-9-

finds that petitioner cannot raise these claims by *habeas* petition. Petitioner could have raised his claims by way of his appeal in the first instance. (*In re Harris*, (1993) 5 Cal.4th 813.) *Habeas corpus* is not a substitute for appeal. (*Id.*)

Accordingly, the petition is denied.

Lodged Ex. 6 at 1-2.

The superior court's citation to *In re Harris* in its order denying the petition for writ of habeas corpus was an invocation of California's procedural bar for claims presented on habeas corpus which could have been, but were not, presented on direct appeal. This rule, sometimes referred to as the *Dixon* rule, "bars California state courts from granting habeas relief to a prisoner who failed to pursue the claims raised in his habeas petition on direct appeal from his conviction, unless his claims fall within an exception to the rule." *La Crosse v. Kernan*, 244 F.3d 702, 705 (9th Cir. 2001) (quoting *In re Dixon*, 41 Cal.2d 756 (1953); *see also Park v. California*, 202 F.3d 1146, 1152 (explaining relationship between *In re Harris* and *In re Dixon*).

As a general rule, a federal habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). In order for the state procedural rule to be found independent, the state law basis for the decision must not be interwoven with federal law. *LaCrosse*, 244 F.3d at 704. To be deemed adequate, the rule must be well established and consistently applied. *Poland v. Stewart*, 169 F.3d 575, 577 (9th Cir. 1999). An exception to the general rule exists if the prisoner can demonstrate either cause for the default and actual prejudice suffered as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Once the state has pleaded the existence of an independent and adequate state

-10-

procedural ground as an affirmative defense, as respondent has in this case, the burden shifts to the petitioner to place the adequacy of that procedural rule in issue. *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). In order to do so, the petitioner must "assert [ ] specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Bennett*, 322 F.3d at 586. Thereafter, the state retains the ultimate burden of proving adequacy of the asserted bar. *Id.* at 585-86.

Here, Petitioner fails to meet his burden of citing authority demonstrating the inadequacy of California's rule barring claims on habeas corpus that could have been, but were not, raised on direct appeal. Indeed, his petition does not address the state court's rejection of his claims on the grounds that they were procedurally barred. Further, once Respondent raised the procedural bar affirmative defense in its answer to the petition, Petitioner failed to file a traverse or respond in any way to the assertion that his breach of plea agreement claim is procedurally barred.

Nor has Petitioner attempted to demonstrate good cause for his failure to pursue his claim on direct appeal or any actual prejudice suffered as a result of the due process violation he currently alleges. Although he appears to contend that he would have withdrawn his plea and proceeded to trial had he known of the court's intention not to sentence him pursuant to his plea agreement, the trial court record clearly indicates the opposite. Petitioner entered a plea which the record demonstrates was knowing, intelligent, and voluntary. Moreover, Petitioner was clearly informed of the trial court's intention not to adhere to the ten year sentence contemplated by his plea agreement and he was given the opportunity to withdraw his plea on those grounds. He declined to do so.

Petitioner further fails to demonstrate that a fundamental miscarriage of justice will result if his claim is not reviewed. His case is not one of those "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *See McCleskey v. Zant*, 499 U.S. 467, 494 (1991). To the contrary, any potential argument by Petitioner

1  that he is actually innocent is belied by the fact that he entered a no contest plea.  Accordingly, this

2  court is precluded from reviewing the merits of Petitioner's procedurally defaulted claim that the

3  his plea bargain was breached by the trial court's imposition of a twelve year sentence in his case.

4  *See Sawyer v. Whitely*, 505 U.S. 333, 338 (1992).

5          Petitioner is not entitled to federal habeas corpus relief on this claim.

6  **B.  Ineffective Assistance of Counsel**

7          **1.  Trial Counsel**

8          Petitioner claims of one of his many trial counsel, David Selzter, who represented

9  him during the entry of his no contest plea on January 30, 2002, rendered ineffective assistance by

10 failing to more clearly articulate on the record that Petitioner was admitting to a great bodily injury

11 enhancement pursuant to CAL. PENAL § 12022.7(a), which carried a three-year term of

12 imprisonment, as opposed to the enhancement alleged in the complaint pursuant to CAL. PENAL §

13 12022.7(e), which carried a lower, middle, or upper term of either three, four, or five years

14 imprisonment.

15         The Sixth Amendment to the United States Constitution guarantees to a criminal

16 defendant the effective assistance of counsel.  A showing of ineffective assistance of counsel has

17 two components.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must

18 demonstrate that, considering all the circumstances, counsel's performance fell below an objective

19 standard of reasonableness.  *Id.* at 687-88.  In assessing an ineffective assistance of counsel claim,

20 "[t]here is a strong presumption that counsel's performance falls within the 'wide range of

21 professional assistance,'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*,

22 466 U.S. at 689), and that counsel "exercised acceptable professional judgment in all significant

23 decisions made."  *Hughes v. Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S.

24 at 689).  As the United States Supreme Court recently emphasized, the question for a federal court

25 conducting habeas corpus review under section 2254(d) "is not whether counsel's actions were

26                                          -12-

1  reasonable." *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011).  "The standards created by

2  *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review

3  is 'doubly' so."  *Id*. (internal quotations and citations omitted).  The determination to be made,

4  therefore, is not whether counsel acted reasonably, but "whether there is any reasonable argument

5  that counsel satisfied *Strickland's* deferential standard."  *Id*.

6          The second factor required for a showing of ineffective assistance of counsel is actual

7  prejudice caused by the deficient performance.  *Strickland*, 466 U.S. at 693-94.  Prejudice is found

8  where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

9  the proceeding would have been different."  *Id*. at 694.  A reasonable probability is a "probability

10 sufficient to undermine confidence in the outcome."  *Id. See also Williams v. Taylor*, 529 U.S. 362,

11 391-92 (2000); *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).  Importantly, on collateral

12 review, a court "need not determine whether counsel's performance was deficient before examining

13 the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to

14 dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course

15 should be followed."  *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (citing *Strickland*, 466

16 U.S. at 697).

17          Petitioner's ineffective assistance of trial counsel claim must fail because, even

18 assuming that he has succeeded in demonstrating that Mr. Seltzer's representation fell below an

19 objective standard of reasonableness, there is no possible way for him to demonstrate prejudice.  In

20 other words, even if Mr. Selzter had more clearly articulated on the record during the January 30,

21 2002 plea hearing that Petitioner was admitting to a great bodily injury enhancement pursuant to

22 CAL. PENAL § 12022.7(a), there is no reasonable probability that Petitioner would have received a

23 different sentence.  Although the record indicates that, during the hearing on Petitioner's motion to

24 reinstate his no contest plea, held on January 9, 2008, there was some disagreement between the

25 parties with regard to whether Petitioner had admitted a great bodily injury enhancement pursuant

26                                              -13-

1    to subsection (a) or (e) of section 12022.7 of the California Penal Code during his initial January 30,

2    2002 plea, the question was ultimately resolved by the court in Petitioner's favor.  Petitioner was

3    not sentenced pursuant to subsection (e), which carried a potentially greater penalty enhancement

4    than subsection (a).  In fact, the record reflects that Petitioner was sentenced, pursuant to subsection

5    (a), to a term of three years imprisonment on the great bodily injury enhancement.  CT at 341.

6              Petitioner is not entitled to federal habeas corpus relief on this claim.

7         **2.  Appellate Counsel**

8              Petitioner contends that appellate counsel, Carolyn Fershtman, rendered ineffective

9    assistance by failing to raise his above ineffective assistance of trial counsel claim on direct appeal.

10   Instead, Ms. Fershtman opted to file a brief pursuant to *People v. Wende*, 25 Cal.3d 436 (1979), in

11   which she raised no appealable issues but, in the alternative, requested that the appellate court

12   conduct an independent examination of the record.  Petitioner argues that it should have been

13   obvious to Ms. Fershtman, following a review of the trial record, that he received ineffective

14   assistance from trial counsel.  Accordingly, her failure to pursue the claim cost him his right to

15   directly appeal his conviction.

16             The *Strickland* standards discussed above apply to appellate counsel as well as trial

17   counsel.  *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th

18   Cir. 1989).  In this case, Petitioner "must first show that his counsel was objectively unreasonable

19   . . . in failing to find arguable issues for appeal - that is, that counsel unreasonably failed to discover

20   nonfrivolous issues and to file a merits brief raising them."  *Smith v. Robbins*, 528 U.S. 259, 285

21   (2000) (internal citation omitted).  Petitioner then has the burden of demonstrating that he has

22   suffered prejudice, or "a reasonable probability that, but for his counsel's unreasonable failure to file

23   a merits brief, he would have prevailed on his appeal."  *Id.* (citing *Strickland*, 466 U.S. at 694).

24             In *Robbins*, the United States Supreme Court upheld California's procedure set forth

25   in *Wende*.  The Court concluded that while California's procedure differed slightly from the

26                                          -14-

1    suggested procedure the Court had set forth in *Anders v. California*, 386 U.S. 738 (1967), the

2    differences did not render the process unconstitutional. *Robbins*, 528 U.S. at 279. Thus, appellate

3    counsel's failure to file a merits brief is not *per se* a violation of the right to appellate counsel.

4    Petitioner may still establish that appellate counsel was ineffective if Petitioner's claims were not

5    frivolous and that he was entitled to a merits brief. *Id*. at 284.

6            Petitioner's ineffective assistance of appellate counsel claim must fail. The merits

7    of Petitioner's ineffective assistance of trial counsel claim, which forms the basis for his ineffective

8    assistance of appellate counsel claim, have been discussed and rejected above because Petitioner

9    suffered no prejudice as a result of trial counsel's alleged error. Because the claim is without merit,

10   Petitioner has failed to demonstrate that appellate counsel's performance was deficient. Counsel

11   was under no obligation to raise a meritless argument on appeal. *See Strickland*, 466 U.S. at 687-88.

12   Moreover, even if Petitioner could demonstrate that appellate counsel's performance was deficient,

13   for the reasons discussed in the above subsection rejecting Petitioner's ineffective assistance of trial

14   counsel claim, there is no likelihood that the same claim would have been successful on appeal.

15           Petitioner is not entitled to federal habeas corpus relief on this claim.

16   **C.  *Cunninham* Violation**

17           Petitioner claims that the trial court violated his rights under *Cunningham v.*

18   *California*, 549 U.S. 270 (2007), by imposing the upper term penalty of nine years on the attempted

19   murder count based on aggravating factors not submitted to a jury and proven beyond a reasonable

20   doubt.

21           "Other than the fact of a prior conviction, any fact that increases the penalty for a

22   crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond

23   a reasonable doubt." *Apprendi v. New Jerse*y, 530 U.S. 466, 490 (2000). For the purposes of

24   *Apprendi*, "the 'statutory maximum' . . . is the maximum sentence a judge may impose *solely on the*

25   *basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely v. Washington*,

26                                                    -15-

1   542 U.S. 296, 303-304 (2004) (emphasis in original).

2          Under California's determinate sentencing scheme, the relevant statutory maximum

3   penalty for crimes that are punishable by precise lower, middle, and upper terms of punishment is

4   the middle term rather than the upper term. *Cunningham v. California*, 549 U.S. 270, 293 (2007).

5   The existence of a single lawfully found aggravating factor is sufficient to authorize an upper term

6   sentence. *People v. Black*, 41 Cal.4th 799, 805-806 (2007) ("*Black II*). *See also Butler v. Curry*,

7   528 F.3d 624, 643-644 (9th Cir. 2008).

8          In Petitioner's case, the sentencing judge indicated that he was imposing the upper

9   term punishment of nine years imprisonment on the attempted murder count based in part on

10  Petitioner's extensive criminal history. RT at 216-217; CAL. R. CT. 4.421(b)(2). A review of the

11  record indicates that Petitioner's criminal history at the time of sentencing consisted of five

12  misdemeanor convictions and eight felony convictions, which would certainly qualify as

13  "numerous" within the meaning of Rule 4.421. *See Black II*, 41 Cal.4th at 818 (two prior felony

14  convictions and three prior misdemeanor convictions were "numerous"); *People v. Searle*, 213

15  Cal.App.3d 1091, 1098 (1989) (three prior convictions were "numerous" in context of the

16  predecessor to Rule 4.421).

17         The trial court properly relied on Petitioner's numerous prior convictions without a

18  jury finding in imposing the upper term on the attempted murder count. Clearly established United

19  States Supreme Court precedent does not preclude imposition of an upper term based on the fact of

20  a prior conviction. *See Blakeley*, 542 U.S. at 301 ("*Other than the fact of a prior conviction*, any

21  fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

22  submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)); *Apprendi*, 530 U.S.

23  at 490; *Almendarez Torres v. United States*, 523 U.S. 224, 247 (1998).

24         To the extent that the trial judge relied on any factors in the body of the probation

25  report other than Petitioner's prior convictions, these factors were relevant only to the selection of

26                                      -16-

a sentence within the authorized statutory term, which included the upper term. *See Butler*, 528 F.3d 624 (9th Cir. 2008) (the Sixth Amendment does not prevent judges from "exercis[ing] discretion – taking into consideration various factors relating both to offense and offender in imposing a judgment *within the range* prescribed by statute." *Id*. (emphasis in original) (quoting *Apprendi*, 530 U.S. at 481). Petitioner's upper term sentence was within the statutory maximum allowable by virtue of his prior convictions.

In any event, Petitioner waived his right to a jury trial in this case and instead elected to enter a plea of no contest. His plea was entered with full knowledge that the judge intended to sentence him to the upper term on the attempted murder count. As previously discussed herein, Petitioner was given the opportunity to withdraw his plea on the grounds that the trial judge did not intend to sentence him pursuant to the plea agreement. Petitioner declined to do so. Where, as here, "a defendant waives a jury trial[,] he is deemed to have consented to a trial of all issues in the case before the court sitting without a jury." *Wright v. Craven*, 412 F.2d 915, 918-919 (9th Cir. 1969). Although a thorough search has not revealed any United States Supreme Court precedent precisely on point, it is reasonable to conclude that when a criminal defendant has waived his right to a jury trial, he has also waived his right to a jury determination of all the issues in the case, including those that form the basis of the trial court's sentencing decision.

Petitioner is not entitled to federal habeas corpus relief on this claim.

**D.  January 26, 2006 Competency Hearing**

Petitioner claims that the trial court denied his constitutional right to be present and participate in his own defense during his January 26, 2006 competency hearing, a critical stage in the proceedings. As Respondent properly points out, however, the record reflects that no hearing of any kind, competency or otherwise, took place in Petitioner's case on January 26, 2006. On January 20, 2006, Petitioner was present at a *Marsden* hearing. Lodged Ex. 1 at 165; Lodged Ex. 2 at 176. On that day, a readiness conference was set for January 27, 2006, and a court trial on

-17-

competency was set for January 30, 2006.  Lodged Ex. 1 at 165; Lodged Ex. 2 at 186-187.  On January 26, 2006, counsel for Petitioner filed an "Offer in Proof of Support of Finding Defendant to Be Incompetent."  Lodged Ex. 1 at 167-174.  On January 27, 2006, Petitioner was present at the readiness conference.  Lodged Ex. 1 at 175.  At that time, the court continued proceedings until January 30, 2006 for the competency trial.  *Id.*  On January 30, 2006, Petitioner appeared at a court trial regarding his competency where the court found him incompetent.  Lodged Ex. 1 at 177; Lodged Ex. 2 at 188-190.  Because the record clearly reflects that Petitioner was present at all proceedings regarding the court's January 2006 incompetency determination, his right to presence was not violated.

Petitioner is not entitled to federal habeas corpus relief on this claim.

## VI.  CONCLUSION

For all of the foregoing reasons, the petition should be denied.  Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.      Petitioner's January 10, 2011 amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied; and

2.      The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

-18-

"Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time waives the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  Any reply to the objections shall be filed and served within seven days after service of the objections.

DATED: November 29, 2011

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE

-19-